UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL BAKER, AN INDIVIDUAL,
AND ASHLEY BAKER, AN INDIVIDUAL,
ON BEHALF OF THEMSELVES AND             Case No. 24-10909
THOSE SIMILARLY-SITUATED,                Hon. Judith E. Levy

       Plaintiffs,

v.

ALM RESTAURANTS DETROIT, LLC,
ALM RESTAURANTS, LLC, ALM
RESTAURANTS QOF, LLC, ALM
RESTAURANTS QOZB, LLC, Domestic
Limited Liability Companies, ALM
RESTAURANTS MANAGEMENT
COMPANY, Domestic Profit Corporation,
and YUSEF ALCODRAY, Individually,

       Defendants.

| | |
|---|---|
| MORGAN & MORGAN, P.A. | STARR, BUTLER & STONER, PLLC |
| Ertis Tereziu (P84911) | Daniel C. Waslawski (P78037) |
| Attorneys for Plaintiffs | Attorneys for Defendants |
| 2000 Town Center, Ste. 1900 | 20700 Civic Center Dr., Ste. 290 |
| Southfield, MI  48076 | Southfield, MI  48076 |
| (248) 739-1953 | (248) 554-2700 |
| etereziu@forthepeople.com | dwaslawski@starrbutler.com |
| elana.gloetzner@forthepeople.com | |

## JOINT MOTION TO APPROVE SETTLEMENT

     Now come the parties jointly, by and through their respective counsel, and

move this Court for an order approving settlement.

{00133578.DOCX}

WHEREFORE, for the reasons discussed more fully in the accompanying brief, the Parties jointly ask that the Court approve the settlement of this action and enter the Order attached hereto as **Exhibit 1-A**, approving the settlement and dismissing this case with prejudice.

| | |
|---|---|
| /s/ Ertis Tereziu | /s/ Daniel C. Waslawski |
| Ertis Tereziu (P84911) | Daniel C. Waslawski (P78037) |
| Attorney for Plaintiffs | Attorney for Defendants |
| 2000 Town Center, Ste. 1900 | 20700 Civic Center Dr., Ste. 290 |
| Southfield, MI  48076 | Southfield, MI  48076 |
| (248) 739-1953 | (248) 554-2700 |
| etereziu@forthepeople.com | dwaslawski@starrbutler.com |


Dated:  March 13, 2025

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL BAKER, AN INDIVIDUAL,
AND ASHLEY BAKER, AN INDIVIDUAL,
ON BEHALF OF THEMSELVES AND      Case No. 24-10909
THOSE SIMILARLY-SITUATED,      Hon. Judith E. Levy

         Plaintiffs,

v.

ALM RESTAURANTS DETROIT, LLC,
ALM RESTAURANTS, LLC, ALM
RESTAURANTS QOF, LLC, ALM
RESTAURANTS QOZB, LLC, Domestic
Limited Liability Companies, ALM
RESTAURANTS MANAGEMENT
COMPANY, Domestic Profit Corporation,
and YUSEF ALCODRAY, Individually,

         Defendants.

| MORGAN & MORGAN, P.A. | STARR, BUTLER & STONER, PLLC |
|---|---|
| Ertis Tereziu (P84911) | Daniel C. Waslawski (P78037) |
| Attorneys for Plaintiffs | Attorneys for Defendants |
| 2000 Town Center, Ste. 1900 | 20700 Civic Center Dr., Ste. 290 |
| Southfield, MI  48076 | Southfield, MI  48076 |
| (248) 739-1953 | (248) 554-2700 |
| etereziu@forthepeople.com | dwaslawski@starrbutler.com |
| elana.gloetzner@forthepeople.com | |

## BRIEF IN SUPPORT OF THE PARTIES' JOINT MOTION TO APPROVE SETTLEMENT

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ..................................................................... ii

ISSUES PRESENTED............................................................................vi

I.     PROCEDURAL AND FACTUAL BACKGROUND ...................................1

II.    LAW AND ARGUMENT..........................................................................4

     A.     Overview of Caselaw Regarding Court Approval of FLSA
         Settlements ..........................................................................4

     B.     The Court Should Approve the Settlement Because it is a Fair and
         Reasonable Resolution of Disputed Claims.........................................7

         1.     No Risk of Fraud or Collusion......................................................7

         2.     Complexity, Expense, and Likely Duration of the
            Litigation........................................................................8

         3.     Amount of Discovery Engaged in by the Parties.....................9

         4.     The Likelihood of Success on the Merits .................................10

         5.     Opinion of Counsel ..................................................................16

         6.     There are No Absent Class Members ......................................17

         7.     The Public's Interest ................................................................17

     C.     Plaintiffs' Attorneys' Fees and Costs

III.   CONCLUSION...........................................................................21

# <u>TABLE OF AUTHORITIES</u>

## <u>Cases</u>:

*Arrington v. Mich. Bell Tel. Co.*,
2012 U.S. Dist. LEXIS 157362, *1 (E.D. Mich. Nov. 2, 2012) ............................ 4, 5

*Athan v. United States Steel*,
364 F. Supp. 3d 748, 754-55 (E.D. Mich. 2019) ................................... 11, 12, 13, 14

*Bassett v. TVA*,
No. 5:09-CV-00039, 2013 U.S. Dist. WL 2902821, at *10
(W.D. Ky. June 13, 2013) ........................................................................... 11, 12, 14

*Bonetti v. Embarq Mgmt. Co.*,
715 F.Supp.2d 1222, 1228 (M.D. Fla. 2009. ........................................................ 18

*Casey v. City of Cabool*,
12 F.3d 799, 805 (8th Cir. 1993) ......................................................................... 19

*Cotton v. Hinton*,
559 F.2d 1326, 1331 (5th Cir. 1977) ...................................................................... 7

*Davis v. Abington Mem'l Hosp.*,
765 F.3d 236, 244 (3d Cir. 2014) ........................................................................ 13

*Ealy–Simon v. Liberty Med. Supply, Inc.*,
No. 05-14059-CIV, 2007 WL 7773834, at *6 (S.D. Fla. Feb. 12, 2007) ............... 14

*Espenscheid v DirectSat USA, LLC*,
No. 09-cv-625, 2011 WL 10069108 at *13 (W.D. Wis. Apr. 11, 2011) ................. 15

*Fegley v. Higgins*,
19 F.3d 1126, 1134 (6th Cir. 1994) ...................................................................... 18

*Flexter v. Action Temp. Servs., Inc.*,
No. 2:15-cv-754, 2016 U.S. Dist. WL 7852351, at *3
(S.D. Ohio Mar. 25, 2016) ........................................................................ 12, 14, 15

*Foster v. Angels Outreach, LLC*,
No. CIVA 206CV980-ID WO, 2007 WL 4468717, at *3
(M.D. Ala. Dec. 17, 2007) ................................................................. 14

*Gentrup v. Renovo Servs., LLC*,
2011 U.S. Dist. LEXIS 67887, 2011 WL 2532922, at *2
(S.D. Ohio Jun. 24, 2011) ................................................................ 5, 6

*Granada Invs., Inc. v. DWG Corp.*,
962 F.2d 1203, 1205 (6th Cir. 1992) ...................................................... 6

*Hamilton v. Frito-Lay, Inc.*,
2007 U.S. Dist. LEXIS 10287 at *4 (M.D. Fla. Jan. 8, 2007) .................................. 6

*In re Cardizem CD Antitrust Litig.*,
218 F.R.D. 508, 523 (E.D. Mich. 2003) .................................................... 8

*In re Telectronics Pacing Sys., Inc.*
137 F. Supp. 2d 985, 1013 (S.D. Ohio 2001) ............................................... 8

*Int'l Union, United Auto., Aerospace and Agr. Implement Workers of Am. v.
General Motors Corp.*,
497 F.3d 615, 631 (6th Cir. 2007) ........................................................ 6

*Johnston v. Spacefone Corp.*,
706 F.2d 1178, 1182 (11th Cir.1983) .................................................... 19

*Killpatrick v Lansing Cmty. College*,
__ Mich App __, __ N.W.2d __, No. 361300, 2023 WL 5417963 at *3
(Mich. Ct. App. Aug. 22, 2023) .......................................................... 16

*Kritzer v. Safelite Solutions, LLC*,
2012 U.S. Dist. LEXIS 74994, at *24 (S.D. Ohio May 30, 2012) ............................ 17

*Levell v. Monsanto Research Corp.*,
191 F.R.D. 543, 557 (S.D. Ohio 2000) .................................................... 16

*Leverso v. South Trust Bank of Ala., Nat. Assoc.*,
18 F.3d 1527, 1531 n.6 (11th Cir. 1994) ................................................... 6

*Lundy v. Catholic Health Sys. of Long Island, Inc.*,
711 F.3d 106, 115 (2d Cir. 2013)........................................................................11, 13

*Lynn's Food Stores, Inc. v. United States*,
679 F.2d 1350, 1354 (11th Cir. 1982) ................................................................4, 5, 6

*Martin v. Spring Break '83 Productions, L.L.C.*,
688 F.3d 247, 255 (5th Cir. 2012) ................................................................................4

*Martinez v. Bohls Bearing Equip. Co.*,
361 F. Supp.2d 608, 631 (W.D. Tex. 2005) ................................................................4

*Mitchell v. Lublin, McGaughy & Assocs.*,
358 U.S. 207, 211, 79 S.Ct. 260, 264, 3 L.Ed.2d 243 (1959)...................................19

*Monahan v. Cnty. of Chesterfield, Va.*,
95 F.3d 1263, 1284 (4th Cir. 1996) ..........................................................................13

*Murphy v. First Student Mgmt. LLC*,
No. 1:16-CV-01966-DAP, 2017 U.S. Dist. WL 346977, *3
(N.D. Ohio Jan. 24, 2017)..........................................................................................14

*Naranjo v. BELFOR USA Grp., Inc.*,
No. 22-CV-10924, 2023 WL 5762418, at *20 (E.D. Mich. Sept. 6, 2023) ............16

*Odil v. Evans*,
2005 WL 3591962, at *3 (M.D. Ga. 2005)................................................................20

*Perdue v. Kenny A.*,
559 U.S. 542, 552 (2010)......................................................................................18, 19

*Reed v. Rhodes*,
179 F.3d 453, 471 (6th Cir. 1999) .............................................................................21

*Smith v. TradeGlobal, LLC*,
No. l:19-CV- 192, 2020 WL 5797897, at *2 (S.D. Ohio Sept. 29, 2020)................9

*Snook v. Valley Ob-Gyn Clinic, P.C.*,
2015 U.S. Dist. LEXIS 2989, 1-3 (E.D. Mich. Jan. 12, 2015)..................................5

*Spencer v. Cent. Servs., LLC*,
2012 U.S. Dist. LEXIS 4927, *11 (D. Md. Jan. 13, 2012)....................................198

*Taylor v. McLane Foodservice, Inc.,*
No. 12-2697-JWL, 2013 U.S. Dist. LEXIS 32924, 2013 WL 943531, at *7
(D. Kan. Mar. 11, 2013)...........................................................................................14

*Thrower v. Peach Cty., Georgia, Bd. of Educ.*,
No. 5:08-CV-176 MTT, 2010 WL 4536997, at *5 (M.D. Ga. Nov. 2, 2010).........14

*United States DOL v. Cole Enters.*,
62 F.3d 775 (6th Cir. 1995) .............................................................................12, 13

*Whitaker v. Powers Enterprises, LLC*,
No. CV 5:20-66-KKC, 2022 WL 289160, at *4 (E.D. Ky. Jan. 31, 2022) .............12

*Whiteman v. 1st Class Towing, Inc.*,
2015 U.S. Dist. LEXIS 66524, *2 (W.D. Mich. April 30, 2015)..............................4

*Williams v. K&K Assisted Living LLC,*
2016 U.S. Dist. LEXIS 9310 *4 (E.D. Mich. Jan. 27, 2016) ....................................6

## Court Rules & Statutes:

MCL 408.471(a)...........................................................................................................15

MCL 408.481(1) ..........................................................................................................15

MCL 408.481(9) ..........................................................................................................16

29 U.S.C. § 206(a)(1)...................................................................................................13

29 U.S.C. § 207(a)(2)....................................................................................................13

29 U.S.C. § 216(b) .................................................................................................17, 18

## <u>ISSUES PRESENTED</u>

I.    Whether this Court should approve the settlement reached between the parties as a result of a court-ordered mediation on December 19, 2024.

Plaintiffs answer: "Yes."


Defendants answer: "Yes."

## I.   <u>PROCEDURAL AND FACTUAL BACKGROUND</u>

1.      On April, 9, 2024, Plaintiffs filed this case in the United States District Court for the Eastern District of Michigan, alleging six wage-and-hour related law claims. In their 155 paragraph Complaint, Plaintiffs allege five claims: Count I - improper meal deductions for worktime in violation of the Fair Labor Standards Act ("FLSA") (ECF No. 1, PageID.18-19); Count II – "improper deductions in violation of the Michigan Wages and Fringe Benefits Act ("WFBA") (ECF No. 1, PageID.20-21); Count III - violations of overtime compensation under the FLSA (ECF No. 1, PageID.21-22); Count IV – conversion under Michigan common law (ECF No. 1, PageID.23); Count V – unjust enrichment under Michigan common law (ECF No. 1, PageID.23-24); and Count VI – declaratory relief (ECF No. 1, PageID.24-27). *See* ECF No. 1.

2.      Shortly after the filing of the lawsuit, Daniel C. Waslawski, counsel for Defendants, agreed on behalf of Defendants to waive service of the summons and complaint, thereby, placing the deadline for Defendants' response to Plaintiffs' complaint at Monday, June 17, 2024. *See* ECF Nos. 4-9.

3.      On April 30, 2024, six additional persons opted into this lawsuit, filed their consents to join Plaintiffs' FLSA claims,  and are now parties to Plaintiffs' FLSA claims. *See* ECF No. 3.

4.      In June 2024, counsel for the Parties met and conferred regarding a potential resolution of the lawsuit and alternative dispute resolution ("ADR"). Counsel for the Parties also met and conferred on Defendants' contemplated motion to dismiss Counts I and II of Plaintiffs' Complaint.

5.      As part of settlement discussions, Defendants voluntarily produced a voluminous number of documents—including time punch records, payroll records, personnel files, employment policies, and electronic records that Plaintiffs contend reflect manual meal break deductions (i.e., electronic records relating to a key part of Plaintiffs' case theory). Defendants also voluntarily produced time card records for over 150 persons. This time card data was produced in Excel format and consists of over 30,000 rows of Excel data.

6.      On November 6, 2024, counsel for Plaintiffs and Defendants appeared for an in-person mediation of this lawsuit with David B. Calzone (P33486) of Calzone Hiser, PLLC. The mediation did not resolve the lawsuit. However, with the assistance of the mediator, the parties obtained clarity on the parties' competing damages models and positions on liability. Based on this productive exchange of information, the parties agreed to convene for a second (i.e., continued) mediation on December 19, 2024.

7.      On December 19, 2024, counsel for Plaintiffs and Defendants appeared for a second in-person mediation of this lawsuit with David B. Calzone (P33486) of

Calzone Hiser, PLLC. A settlement was reached at the mediation with the assistance of the mediator.

8.      Thereafter, the Parties and their respective counsel worked to finalize a long-form settlement agreement and joint motion for approval of the settlement. Accordingly, the terms of the settlement are encapsulated in a written settlement agreement, a copy of which is attached hereto as **Exhibit 1.**  As a result of this settlement, the parties will save the costs, expenses, and time associated with proceeding in litigation.

9.      The settlement agreement contains a provision for proposed costs and fees to be paid to counsel for Plaintiffs. The Plaintiffs believe that the costs and fees are reasonable and commensurate with the service rendered by Plaintiffs' Counsel and request that they be approved.  As part of the settlement, the Defendants have agreed not to object to the award of the fees and costs up to the amount stated in the settlement agreement. Defendants take no other position regarding the reasonableness of the Plaintiffs' attorney's fees and costs.

10.     Upon approval of the Settlement, the parties agree that all claims against all Defendants will be dismissed <u>with</u> prejudice and <u>without</u> additional costs or attorney fees not already reflected in the settlement agreement.

11.     The parties agree that the settlement is a fair and reasonable resolution of a bona fide dispute over issues arising under the FLSA. In particular, while

Defendants deny that they violated the FLSA, the parties agree that the settlement represents a fair compromise of the alleged claims in the event that Plaintiffs prevailed on the merits of their case.

12.    Because the parties believe that the settlement represents a fair resolution of this matter, they jointly ask that the Court approve the settlement of this action and enter the Order attached hereto as **Exhibit 1-A**, approving the settlement and dismissing this case with prejudice.

## II.    <u>LAW AND ARGUMENT</u>

## A.    Overview of Caselaw Regarding Court Approval of FLSA Settlements

As a general rule, "court approval is required for the settlement of claims for back wages or liquidated damages under the FLSA." *Arrington v. Mich. Bell Tel. Co.*, 2012 U.S. Dist. LEXIS 157362, *1 (E.D. Mich. Nov. 2, 2012) (Lawson, J.) (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982)).[1] Thus, when settling disputes under the FLSA, the parties must submit their

---

[1] Courts have differed as to the enforceability of a private settlement of an FLSA claim. *Whiteman v. 1st Class Towing, Inc*., 2015 U.S. Dist. LEXIS 66524, *2 (W.D. Mich. April 30, 2015) citing, *Martin v. Spring Break '83 Productions, L.L.C.*, 688 F.3d 247, 255 (5th Cir. 2012) (A settlement agreement "is an enforceable resolution of those FLSA claims predicated on a *bona fide* dispute about time worked and not as a compromise of guaranteed FLSA substantive rights themselves.") (emphasis supplied); *see also Martinez v. Bohls Bearing Equip. Co.*, 361 F. Supp.2d 608, 631 (W.D. Tex. 2005) ("[P]arties may reach private compromises as to FLSA claims where there is a *bona fide* dispute as to the amount of hours worked or compensation due. A release of a party's rights under the FLSA is enforceable under such circumstances.") Due to the difference in the treatment of FLSA settlements by the

agreed-upon settlement to the Court for a determination as to whether the settlement is a "fair and reasonable resolution of a bona fide dispute." *Snook v. Valley Ob-Gyn Clinic, P.C.*, 2015 U.S. Dist. LEXIS 2989, 1-3 (E.D. Mich. Jan. 12, 2015) (citing *Lynn's Food Stores*, 679 F.2d at 1354-55); *see also Gentrup v. Renovo Servs., LLC*, 2011 U.S. Dist. LEXIS 67887, 2011 WL 2532922, at *2 (S.D. Ohio Jun. 24, 2011). "If the settlement is a reasonable compromise over issues that are actually in dispute, the Court may approve the settlement in order to promote the policy of encouraging settlement of litigation." *Arrington*, 2012 U.S. Dist. LEXIS 157362, *2 (internal citations and quotations omitted); *see Lynn's Food Stores*, 679 F.2d at 1354.

In *Lynn's Food Stores,* the court held that "[t]here are only two ways in which back wage claims arising under the FLSA can be settled or compromised by employees." 679 F.2d at 1352. "First, under section 216(c), the Secretary of Labor is authorized to supervise payment to employees of unpaid wages owed to them." *Id.* at 1353. Alternatively, under section 216(b), when an employee brings "a private action for back wages . . . and present[s] to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness." *Snook,* 2015 U.S. Dist. LEXIS 2989 at * 1-3 (citing *Lynn Food Stores*, 679 F. 3d at 1352).

---

courts (some requiring approval, while others do not) that the parties seek approval of the settlement in this case.

To determine whether a proposed FLSA settlement is fair and reasonable, courts consider: (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery completed; (4) the likelihood of success on the merits; (5) the opinion of class counsel and representatives; (6) the reaction of absent class members; and (7) public interest in the settlement. *Snook*, 2015 U.S. Dist. LEXIS 2989 at * 2-3, citing *Lynn's Food Stores*, 679 F.2d at 1352-53 (citing *Int'l Union, United Auto., Aerospace and Agr. Implement Workers of Am. v. General Motors Corp*., 497 F.3d 615, 631 (6th Cir. 2007); and *Granada Invs., Inc. v. DWG Corp*., 962 F.2d 1203, 1205 (6th Cir. 1992)). A district court may choose to consider only the factors that are relevant to the settlement at hand. *Gentrup*, 2011 U.S. Dist. LEXIS 67887, 2011 WL 2532922, at *3.

Once the Court determines that the settlement reflects a reasonable compromise over issues that are actually in dispute, the Court may approve the settlement "in order to promote the policy of encouraging settlement of litigation." *Williams v. K&K Assisted Living LLC,* 2016 U.S. Dist. LEXIS 9310 *4 (E.D. Mich. Jan. 27, 2016); *see Lynn Food Stores,* 679 F.2d at 1354; *see also Leverso v. South Trust Bank of Ala., Nat. Assoc.*, 18 F.3d 1527, 1531 n.6 (11th Cir. 1994). When considering these factors, the Court should be mindful of the strong presumption in favor of finding a settlement fair. *Hamilton v. Frito-Lay, Inc.*, 2007 U.S. Dist.

LEXIS 10287 at *4 (M.D. Fla. Jan. 8, 2007) (citing *Cotton v. Hinton.* 559 F.2d 1326, 1331 (5th Cir. 1977)).

**B.     The Court Should Approve the Settlement Because it is a Fair and Reasonable Resolution of Disputed Claims**

This settlement reached between the parties is fair and reasonable. The settlement resolves a disputed claim between adverse parties and puts an end to litigation that would be far costlier to pursue given the complexity of issues in this matter. Accordingly, it should be approved.

**1.     No Risk of Fraud or Collusion**

There is no risk of fraud or collusion. In the instant case, there is a *bona fide* dispute over whether Defendants violated the FLSA and relevant state law. Plaintiffs alleged Defendants do not pay for all time that Plaintiffs and the Putative Class Members worked on their behalf.   Defendants deny Plaintiffs' allegations and maintain that they have properly paid Plaintiffs and the Putative Class Members for all hours worked.

There was no fraud or collusion in reaching this Settlement. The Parties engaged in extensive informal discovery and settlement was reached only through the assistance of a highly skilled and well-respected wage and hour mediator – David Calzone. The Settlement will eliminate the risks and costs both sides would bear if this litigation continued to resolution on the merits. In agreeing upon the proposed Settlement, the Parties had sufficient information and conducted an adequate

investigation to allow them to make an educated and informed analysis and conclusion.

### 2.    Complexity, Expense, and Likely Duration of the Litigation

In evaluating a proposed class settlement, the court also must weigh the risks, expenses, and delays the plaintiffs would face if they continued to prosecute the litigation through trial and appeal against the amount of recovery provided to the class in the proposed settlement. *See In re Cardizem CD Antitrust Litig.,* 218 F.R.D. 508, 523 (E.D. Mich. 2003). Courts have consistently held that the expense and possible duration of litigation are major factors to be considered in evaluating the reasonableness of a settlement. *See e.g., In re Telectronics Pacing Sys., Inc.* 137 F. Supp. 2d 985, 1013 (S.D. Ohio 2001). For class actions in particular, courts view settlement favorably because it "avoids the costs, delays and multitudes of other problems associated with them." *Id.* at 1013.

Here, if not for the Settlement, the case would have continued to be fiercely contested by the Parties. Defendants, which are represented by capable and well-versed wage and hour counsel, have demonstrated the commitment to defend the case through trial and beyond trial, if necessary. The expense of continued litigation would be substantial as the Parties would have to complete a lengthy and extensive trial. Any trial would last more than one month, and involve numerous attorneys and witnesses; the introduction of voluminous documentary and deposition evidence;

vigorously contested motions; and the expenditure of enormous amounts of judicial and counsel resources. Even if successful at trial, there most certainly would be appeals which would deny the Class any recovery for years. Avoiding such unnecessary expenditure of time and resources clearly benefits all parties and the Court. *See Smith v. TradeGlobal, LLC,* No. l:19-CV- 192, 2020 WL 5797897, at *2 (S.D. Ohio Sept. 29, 2020) (recognizing that "[c]ontinued litigation would involve considerable expenditures of time and resources of the parties and the Court. If this case were to continue, the parties would expend significant time and money prosecuting the litigation through dispositive motions, trial, and possible appeals.").

The value of an immediate recovery here outweighs the mere possibility of future relief after protracted and expensive litigation.

### 3.    Amount of Discovery Engaged in by the Parties

The Parties have exchanged significant amounts of data regarding Plaintiffs' and the Putative Class Members' claims. Further, Plaintiffs' Counsel has been in regular communication with Plaintiffs regarding their claims for unpaid worktime, has reviewed hundreds of client documents, has conferred with the Opt-In Plaintiffs before the Court to fully understand their claims, and has spent significant time and effort in the compilation of damage assessments for the Settlement Class Members. The Parties engaged in numerous meetings focused on attempting to resolve this case and ultimately participated in formal mediation. Plaintiffs' Counsel was well informed of the available damages and clearly understood the legal and

factual issues involved and was able to meaningfully engage in settlement negotiations with Defendants.

### 4.   The Likelihood of Success on the Merits

Plaintiffs' likelihood of success on the merits as well as the amount they would be awarded in the event they were successful on her claims is uncertain. This further suggests that the settlement is fair and appropriate. Plaintiffs assert, but Defendants deny, that they (and the Putative Class Members) are owed compensation due to Defendant's alleged violations of the FLSA. The range of possible recovery, if any, by Plaintiffs and the Putative Class Members is open to dispute. Even if Plaintiffs succeed on the merits of their claims, which would require substantial additional time and an exercise of resources by both sides, the specific amount of their recovery is uncertain, and may be as Defendants contend *de minimis.*

Moreover, Defendants believe that—at the minimum—Counts I and II would be dismissed for failure to state a claim upon which relief may be granted. With respect to Count I, Plaintiffs allege that Defendants violated the FLSA by deducting Plaintiffs' "worktime as unpaid breaks, regardless of whether they took such breaks." ECF No. 1 at ¶ 102. According to Plaintiffs, this "resulted in improper compensation for all hours worked." *Id.* Thus, Plaintiffs assert a claim seeking damages for alleged "improper compensation" and describe their claim as one for "improper meal deductions for worktime in violation of the FLSA." *See* ECF No. 1

at PageID.18-19. But even assuming all properly pled factual allegations are true, Count I of Plaintiffs Complaint, which seeks payment of "unpaid wages" and "unpaid worktime," fails to state a claim upon which relief may be granted. This is because Plaintiffs—in contrast to seeking damages for unpaid overtime, which they separately assert a claim for under Count III of the Complaint—only seek recovery of "unpaid wages" and "unpaid worktime" under Count I. This fails to state a claim upon which relief may be granted because the FLSA only provides a basis for a claim where an (1) employer compensates an employee below the minimum wage (FLSA, § 206) or (2) fails to pay an employee overtime compensation, which must be at least one-and-one-half times the regular rate of pay, during workweeks where the employee worked more than 40 hours (FLSA, § 207). *See Athan v. United States Steel*, 364 F. Supp. 3d 748, 754-55 (E.D. Mich. 2019) (summarizing gap time claims and collecting cases); *Bassett v. TVA*, No. 5:09-CV-00039, 2013 U.S. Dist. WL 2902821, at *10 (W.D. Ky. June 13, 2013) (same). The Western District of Kentucky, in *Bassett*, 2013 U.S. Dist. WL 2902821 at *10, explained:

> Two types of gap time claims generally arise under the FLSA. First, a "pure gap time" claim is one "in which an employee has not worked 40 hours in a given week but seeks recovery of unpaid time worked[.]" *Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106, 115 (2d Cir. 2013). In other words, a pure gap time claim does not involve a claim for overtime wages. Rather, the plaintiff seeks to recover some portion of his or her normal wage that has not been paid for the normal forty-hour workweek. Second, an "overtime gap time" claim is one "in which an employee has worked over 40 hours in a given week but seeks recovery for unpaid work under 40 hours." *Id.* In addition to seeking

overtime, the plaintiff is seeking compensation for unpaid straight time that accrued during the standard forty hour workweek.

As for the first type of gap time claims, which are known as "pure gap time" claims, this District has recognized, "[a]ccording to the vast majority of cases, one cannot bring an action under the FLSA for 'gap time' in the absence of overtime work and in the absence of an allegation that the average wage falls below the federal minimum wage." *Athan*, 364 F. Supp. 3d at 754-55 (holding that gap time claims are "not legally cognizable under the FLSA"). Virtually all district courts within the Sixth Circuit share the *Athan* court's conclusion.[2] And as the Eastern District of Michigan has recognized:

> The Sixth Circuit implicitly adopted this rule in *United States DOL v. Cole Enters.*, 62 F.3d 775 (6th Cir. 1995) (noting that "several courts have held that an employer meets the minimum wage requirements if the total weekly wage paid is equal to or greater than the number of hours worked in the week multiplied by the statutory minimum hourly rate" and further finding that even under that rule, the defendant had not paid his employees minimum wage).

---

[2] *See, e.g. Whitaker v. Powers Enterprises, LLC*, No. CV 5:20-66-KKC, 2022 WL 289160, at *4 (E.D. Ky. Jan. 31, 2022) ("While the Sixth Circuit Court of Appeals has not addressed the issue, the prevailing trend among district courts within the Sixth Circuit has been to adopt the Second Circuit's approach in *Lundy*, finding that the FLSA does not provide redress for gap time claims.") (citing *Athan*, 364 F. Supp. 3d at 755); *Bassett*, 2013 U.S. Dist. WL 2902821 at *10 ("For pure gap time claims most courts hold than an employee who has not worked overtime has no claim under the FLSA for hours worked below the 40-hour overtime threshold, unless the hourly wage falls below the federal minimum wage.") (internal quotations, brackets, and citation omitted); *Flexter v. Action Temp. Servs., Inc.*, No. 2:15-cv-754, 2016 U.S. Dist. WL 7852351, at *3 (S.D. Ohio Mar. 25, 2016) ("The statutory language of the FLSA does not expressly allow for the recovery of unpaid straight or gap time.")

*Athan*, 364 F. Supp. 3d at 754-55 (quoting *Cole Enters.*, 62 F.3d at 775).

The shared conclusion of the *Athan* court and other federal district courts in the Sixth Circuit track the statutory text of the FLSA, which sets a federal minimum wage, see 29 U.S.C. § 206(a)(1), and establishes forty hours as the standard workweek. *Id.* § 207(a)(2). It also aligns with the Department of Labor's position regarding gap time. *See* FLSA W.H. Op. Ltr., 2004-14 ("As long as overall earnings for the workweek (exclusive of gap time) equal or exceed the amount due at minimum wage for all hours worked, including gap time hours, there is no violation of the FLSA in a non-overtime workweek."). It is also consistent with numerous federal appellate courts. *See Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106, 116 (2d Cir. 2013) ("[s]o long as an employee is being paid the minimum wage or more, FLSA does not provide recourse for unpaid hours below the 40-hour threshold, even if the employee also works overtime hours the same week."); *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 244 (3d Cir. 2014) ("Courts widely agree that there is no cause of action under the FLSA for 'pure' gap time wages — that is, wages for unpaid work during pay periods without overtime."); *Monahan v. Cnty. of Chesterfield, Va.*, 95 F.3d 1263, 1284 (4th Cir. 1996) ("Absent a minimum wage/maximum hour violation, we find no remedy under the FLSA for pure gap time claims. Our ruling precludes an employee from invoking the jurisdiction of federal court on a pure gap time claim allegedly under the FLSA when there is no

minimum wage/maximum hour violation."). [3]

As it relates to overtime gap time claims (*i.e.*, the second type of gap time claim), virtually all district courts in the Sixth Circuit faced with overtime gap time claims have held that such claims are not legally cognizable. *See Athan*, 364 F. Supp. 3d at 755 ("This Court therefore joins other district courts in the Sixth Circuit in finding that claims for gap time are not cognizable under the FLSA, regardless of whether Plaintiffs seek compensation for pure gap time or overtime gap time."); *Flexter*, 2016 U.S. Dist. WL 7852351, *4-5 (holding that overtime gap times claims do not constitute legally cognizable claims); *Murphy v. First Student Mgmt. LLC*, No. 1:16-CV-01966-DAP, 2017 U.S. Dist. WL 346977, *3 (N.D. Ohio Jan. 24, 2017) (same); *Bassett*, 2013 U.S. Dist. WL 2902821, at *30-32 (W.D. Ky. June 13, 2013) (same). This is because "the statute makes no mention of relief in the form of

---

[3] Numerous federal district courts have also reached the same conclusion. *Thrower v. Peach Cty., Georgia, Bd. of Educ.*, No. 5:08-CV-176 MTT, 2010 WL 4536997, at *5 (M.D. Ga. Nov. 2, 2010) ("[T]he clear weight and trend of authority, nearly twenty years later, is that pure gap time claims are not compensable."); *Foster v. Angels Outreach, LLC*, No. CIVA 206CV980-ID WO, 2007 WL 4468717, at *3 (M.D. Ala. Dec. 17, 2007) ("[The FLSA] does not provide a remedy to Plaintiffs for their unpaid contractual wages which exceed the statutory mandated minimum wage."); *Ealy–Simon v. Liberty Med. Supply, Inc.*, No. 05-14059-CIV, 2007 WL 7773834, at *6 (S.D. Fla. Feb. 12, 2007) ("FLSA law is such that an employee can seek minimum wage or overtime compensation only (and hence no straight or 'gap' time)."); *Taylor v. McLane Foodservice, Inc.*, No. 12-2697-JWL, 2013 U.S. Dist. LEXIS 32924, 2013 WL 943531, at *7 (D. Kan. Mar. 11, 2013) ("[W]hen [the] average hourly rate is at or above the federal minimum wage level, no violation of the FLSA has occurred.")

unpaid regular wages for a violation of the maximum hours provision. Stated simply, the FLSA provides no avenue for the recovery of straight-time pay." *Flexter*, 2016 U.S. Dist. WL 7852351, *4 (quoting *Espenscheid v DirectSat USA, LLC,* No. 09-cv-625, 2011 WL 10069108 at *13 (W.D. Wis. Apr. 11, 2011).

Here, Plaintiffs do *not* allege that Defendants alleged action of "deducting…worktime as unpaid breaks, regardless of whether they took such breaks" (*Id.* at ¶ 102), caused them to earn less than minimum wage for any time worked in any workweek. Thus, any such purportedly unpaid wages constitute "gap time," which is unrecoverable under the FLSA.

With respect to Count II, Plaintiffs make a claim for improper deductions in violation of the WFBA. *See* ECF No. 1. at ¶¶ 109-117. However, both the WFBA and caselaw interpreting the same provide that an aggrieved employee <u>must</u> exhaust his or her administrative remedies with LARA before resorting to litigation. Indeed, Section 11 of the WFBA set forth a detailed administrative-complaint procedure. *See* MCL 408.481(1). It provides, "[a]n employee who believes that his or her employer has violated this act may file a written complaint with the department within 12 months after the alleged violation." MCL 408.481(1).[4] Following LARA's disposition of the complaint, an employee who disagrees with LARA's disposition

---

[4] The WFBA defines the term "department" as the "department of licensing and regulatory affairs." MCL 408.471(a).

may seek judicial review. MCL 408.481(9). *See also Killpatrick v Lansing Cmty. College*,__ Mich App __, __ N.W.2d __, No. 361300, 2023 WL 5417963 at *3 (Mich. Ct. App. Aug. 22, 2023) ("If the employee disagrees with the agency's disposition of the WFBA claim, then the employee can seek review of that disposition in circuit court." (citing MCL 408.481(9)). *See also Naranjo v. BELFOR USA Grp., Inc.*, No. 22-CV-10924, 2023 WL 5762418, at *20 (E.D. Mich. Sept. 6, 2023) ("Plaintiff fails to demonstrate that she exhausted her administrative remedies. She does not allege filing a complaint with Michigan's labor department. As such, her Michigan law claim fails.")

Here, Plaintiffs' Complaint is completely silent as to whether they exhausted the WFBA's administrative-complaint procedure. Accordingly, the claim would potentially be subject to dismissal.

### 5. Opinion of Counsel

Plaintiffs' counsel is of opinion that settlement is in the parties' interest. *Levell v. Monsanto Research Corp.*, 191 F.R.D. 543, 557 (S.D. Ohio 2000). Plaintiffs' Counsel has considerable experience litigating FLSA collective and class action cases across the country. Defendants are also represented by experienced counsel. All counsel believe that this settlement is in the best interest of their respective clients. Accordingly, this factor favors approval.

### 6.    There are No Absent Class Members

This is an FLSA case, and as such, no party may be bound by a settlement unless they "opt-in" to the case. 29 U.S.C. § 216(b) (No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.) Except for the Plaintiffs, no person has opted into the case. As such, there are no "absent class members" being bound by this settlement, thereby leaving any person who so desires free to pursue their own wage claims, if they believe such a claim exists. As such, this factor also favors approval.

### 7.    The Public's Interest

The public's interest in judicial economy and amicable dispute resolution favors settlement on the terms voluntarily agreed to by the parties. *Kritzer v. Safelite Solutions, LLC*, 2012 U.S. Dist. LEXIS 74994, at *24 (S.D. Ohio May 30, 2012) (drawing an end to "potentially long and protracted litigation" by virtue of a settlement agreement weighs in the favor of public interest.)  Here, the parties have voluntarily and amicably resolved their dispute via a settlement that all parties have agreed to. Thus, this factor also favors approval.

In this case, all seven factors the court is to consider in determining whether a settlement is "fair and reasonable" favor approval of the settlement. As such, the parties ask the Court to approve the settlement and enter an order of dismissal with

prejudice.

**C.      Plaintiffs' Attorneys' Fees and Costs[5]**

Section 216(b) of the FLSA provides that "[t]he court in such action *shall*, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b) (emphasis added). An award of attorneys' fees to a prevailing plaintiff under § 216(b) of the FLSA is mandatory, but the amount of the award is within the discretion of the judge. *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994). Here, the parties agreed to an attorney fee payment as set forth in the settlement agreement. The attorney fee was agreed upon separately and without regard to the amount paid to Plaintiffs. *Bonetti v. Embarq Mgmt. Co.*, 715 F.Supp.2d 1222, 1228 (M.D. Fla. 2009).

Congress enacted fee-shifting statutes in order to ensure that federal rights are adequately enforced.  Under a fee-shifting statute, "a 'reasonable' fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious" action to vindicate the rights protected under the statute. *Perdue v.*

---

[5] Defendants lack information regarding the time Plaintiffs' counsel spent preforming particular tasks in this matter and therefore, cannot evaluate the reasonableness of such time. However, because Defendants believe  that the overall fee request is within the range of reasonableness, they have agreed not to object to Plaintiff's fee request. Defendants neither join in nor oppose the argument regarding fees.

*Kenny A.*, 559 U.S. 542, 552 (2010). "Fee awards must be structured so that attorneys of quality and experience with other profitable demands upon their time will not need to sacrifice income available in alternative enterprises in order to effect a public policy intended to protect all citizens." *Casey v. City of Cabool*, 12 F.3d 799, 805 (8th Cir. 1993). The Supreme Court has stated that there is a "strong presumption" that the lodestar figure represents a reasonable attorneys' fee, which may be overcome only "in those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee." *Perdue,* 559 U.S. at 552.

Moreover, "[i]n FLSA cases, like other discrimination or civil rights cases, the attorneys' fees need not be proportional to the damages plaintiffs recover, because the award of attorneys' fees in such cases encourages the vindication of Congressionally identified policies and rights." *Spencer v. Cent. Servs., LLC*, 2012 U.S. Dist. LEXIS 4927, \*11 (D. Md. Jan. 13, 2012). The FLSA is a remedial statute that "'has been construed liberally to apply to the furthest reaches consistent with congressional direction.'" *Johnston v. Spacefone Corp*., 706 F.2d 1178, 1182 (11th Cir.1983) (quoting *Mitchell v. Lublin, McGaughy & Assocs*., 358 U.S. 207, 211, 79 S.Ct. 260, 264, 3 L.Ed.2d 243 (1959)). Awarding employees their attorneys' fees is necessary to "provide an adequate economic incentive for private attorneys" to take FLSA cases and "thereby to ensure competent legal representation for legitimate

claims." *Odil v. Evans*, 2005 WL 3591962, at *3 (M.D. Ga. 2005). Here, Plaintiffs' counsel's attorneys' fees and costs are based upon their lodestar through the settlement process and are reasonable given the complex legal theories presented in the case, the amount of resources expended to investigate, research, and analyze Plaintiffs' claims, responding to Pre-Hearing Motion Conference request, and negotiating the settlement. Specifically, Plaintiffs' counsel has litigated this case since March 16, 2024, which has entailed: investigating the claims, drafting pleadings, multiple administrative filings, negotiating settlement, travelling, researching, writing, and more. The activities undertook in litigating this case and reaching the present agreement were reasonable and necessary.

Plaintiffs' counsel's fee settlement reflects resources expended to investigate and analyze claims, respond to Pre-Hearing Motion Conference requests, and negotiate settlement at two mediations. Since March 16, 2024, Plaintiffs' counsel has investigated claims, drafted pleadings, filed administrative documents, negotiated settlement, traveled, researched, calculated damages, attended multiple mediations, and performed other necessary tasks. These activities were reasonable and necessary, resulting in full relief to the Plaintiffs and the Collective. The fee settlement is reasonable because it was negotiated separately after securing full relief for Plaintiffs. Finally, the amount is reasonable because it represents the mediator's compromise, satisfying neither Party completely. Thus, the settlement cannot

constitute a windfall for Plaintiffs' counsel. *See Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999) ("[a] reasonable fee is one that is adequate to attract competent counsel, but . . . [does] not produce windfalls to attorneys."). For these reasons, Plaintiffs submit that their attorneys' fees and costs are reasonable and should be approved.

### III.   <u>CONCLUSION</u>

Plaintiffs and Defendants agree that the settlement, the terms of which are set forth in **Exhibit 1,** is a fair and reasonable resolution of a bona fide FLSA dispute. As such, the parties jointly request that this Court approve the settlement and enter the order attached hereto as **Exhibit 1-A**.

WHEREFORE, for the reasons discussed more fully in the accompanying brief, the Parties jointly ask that the Court approve the settlement of this action and enter the Order attached hereto as **Exhibit 1-A**, approving the settlement and dismissing this case with prejudice.

/s/ Ertis Tereziu
Ertis Tereziu (P84911)
Attorney for Plaintiffs
2000 Town Center, Ste. 1900
Southfield, MI  48076
(248) 739-1953
etereziu@forthepeople.com

/s/ Daniel C. Waslawski
Daniel C. Waslawski (P78037)
Attorney for Defendants
20700 Civic Center Dr., Ste. 290
Southfield, MI  48076
(248) 554-2700
dwaslawski@starrbutler.com

Dated:  March 13, 2025

## CERTIFICATE OF SERVICE

The undersigned says that on March 13, 2025, she has caused to be served a copy of **Joint Motion to Approve Settlement, Brief in Support of Motion, and this Certificate of Service** via the Court's electronic filing system upon all attorneys of record.

/s/ Taylor R. Sikorski
Taylor R Sikorski

# EXHIBIT 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Michael Baker, an individual, and
Ashley Baker, an individual, on behalf
of themselves [sic] and those
similarly-situated,

Case No. 24-10909
Hon. Judith E. Levy

Plaintiffs,

v.

ALM RESTAURANTS DETROIT, LLC,
ALM RESTAURANTS, LLC, ALM
RESTAURANTS QOF, LLC, ALM
RESTAURANTS QOZB, LLC, Domestic
Limited Liability Companies, ALM
RESTAURANTS MANAGEMENT
COMPANY, Domestic Profit Corporation,
and YUSEF ALCODRAY, Individually,

Defendants.

| | |
|---|---|
| MORGAN & MORGAN, P.A. | STARR, BUTLER & STONER, PLLC |
| Ertis Tereziu (P84911) | Daniel C. Waslawski (P78037) |
| Attorneys for Plaintiffs | Attorneys for Defendants |
| 2000 Town Center, Ste. 1900 | 20700 Civic Center Dr., Ste. 290 |
| Southfield, MI 48076 | Southfield, MI 48076 |
| (248) 739-1953 | (248) 554-2700 |
| etereziu@forthepeople.com | dwaslawski@starrbutler.com |

## SETTLEMENT AGREEMENT AND RELEASE

WHEREAS, Plaintiffs Ashley Baker and Michael Baker (Ashley Baker and Michael Baker are hereinafter collectively referred to here as "Named Plaintiffs") filed a civil action on April 9, 2024, individually and on behalf of all other allegedly similarly situated persons, against ALM Restaurants Detroit, LLC, ALM Restaurants, LLC, ALM Restaurants QOF, LLC, ALM Restaurants

{00133384.DOCX}

1

QOZB, LLC, ALM Restaurants Management Company, and Yusef Alcodray ("Alcodray") (hereinafter collectively referred to as "Defendants"), in the Eastern District of Michigan, Case No. 24-10909 (the "Action"). Since the Action was filed, approximately six individuals ("Opt-Ins") have consented to join the Action as plaintiffs. Collectively the Named Plaintiffs and the Opt-Ins are referred to as "Plaintiffs."

WHEREAS, on December 19, 2024, the Named Plaintiffs, the Named Plaintiffs Counsel, authorized representatives of Defendants, and Defendants' Counsel attended a second facilitative mediation (the "Mediation") with an agreed upon private mediator, David Calzone, which was conducted in-person at the offices of Starr, Butler &Stoner, PLLC. At the mediation, the Parties agreed to resolve the matter.

WHEREAS, it is the desire of the Parties to fully, finally, and forever memorialize, settle, compromise, and discharge all disputes and claims brought in the Action arising out of the facts alleged or that reasonably arise out of the facts alleged in this Action, *i.e.,* the alleged practices set forth in the pleadings in the Action.

NOW, THEREFORE, in consideration of the mutual covenants and promises set forth herein, the Parties enter into this Settlement Agreement and Release ("Settlement Agreement"), subject to the Court's approval, as follows:

1.    Definitions:

The "Settlement Class" or the "Class" consists of all hourly employees of Defendants who worked at "McDonald's" franchises owned and operated by Defendants and/or members of their corporate family located at (a) 27901 Gratiot Ave, Roseville, MI, (b) 25900 Crocker Blvd, Harrison Township, MI, (c) 27675 Gratiot Ave, Roseville, MI, and (d) 1617 S Gratiot Ave, Clinton Township, MI, who had a meal break (i.e., both start and end time) manually entered by the user account of a member of Defendants' management during the time period of June 1, 2023 – March 17, 2024.

a.    "Settlement Class Member" means Named Plaintiffs, Opt-In Plaintiffs, and Settlement Class Members who opt-into the case

{00133384.DOCX}

2

Docusign Envelope ID: 6647B951-F02C-4A5B-AB28-E8SB9F0ECC45

by signing and returning a settlement claim form in the form of the accompanying Exhibit C.

b. "Releasees" refers to and includes Defendants, their present and former subsidiaries, affiliates, divisions, parent companies, holding companies, stockholders, shareholders, officers, directors, employees, agents, servants, representatives, attorneys, insurers, reinsurers, and the successors, heirs and assigns of any such entity or person, as well as any individual who could be included within the definition of "employer" under the Fair Labor Standards Act ("FLSA"), the Michigan Improved Workforce Opportunity Wage Act, MCL § 408.931 *et seq.,* the Michigan Payment of Wages and Fringe Benefit Act, MCL § 408.471 *et seq.*, and/or any federal, state, or local law or ordinance pertaining to the payment of wages in any location that a Settlement Class Member worked or resided, including but *not* limited to 8825 E. Jefferson, LLC, 10400 Gratiot Ave., LLC, 14271 Gratiot Ave., LLC, 27901 Gratiot Ave, LLC, 26765 Gratiot Ave, LLC, 1617 S. Gratiot Ave, LLC, 25900 Crocker Blvd., LLC, 18201 Mack Ave, LLC, 17921 E. 9 Mile Rd, LLC, 17800 E. 8 Mile Rd, LLC, 22333 E. 9 Mile Rd., LLC, 7300 Wyoming Road, LLC, 13158 Ford Road, LLC, 14860 Michigan Avenue, LLC and all officers, directors, and managers of Defendants and the aforementioned entities in their personal capacities.

c.    The "Parties" refers collectively to Plaintiffs and Defendant.

d.    "Class Counsel" refers to Morgan & Morgan, P.A.

e.    "Class Period" means the period beginning on June 1, 2023 and extending through the final disposition of this matter.

f.    "Settlement Administrator" means Rust Consulting, Inc.

g.    "Effective Date" means the date on which the last of all of the following events have occurred, provided that each and every of the following events occurred: (i) counsel for Defendants is in physical receipt of a fully executed copy of this Stipulation, and a completed and signed IRS Form W-9 from Morgan & Morgan, P.A.; (ii) Named Plaintiffs have filed with the Court a motion for

Docusign Envelope ID: 5647B951-F02C-45B-AB28-E8SB9F0ECS45

approval of the settlement seeking approval of this settlement and dismissal of the Lawsuit with prejudice, and (iii) the Court has entered a final order approving the Settlement and issued the Judgment dismissing the Lawsuit with prejudice.

2. This Settlement Agreement is entered into between the Plaintiffs and Defendants. This Settlement Agreement is subject to the terms hereof and approval by the Court. Plaintiffs and Defendants agree to fully settle, compromise, and resolve all claims that were or could have been brought in the Action based on the facts pled, on the terms set forth in this Settlement Agreement.

3. The Parties agree to waive all appeals arising out the approval of this stipulation and/or the entry of Judgment by the court.

4. Nothing contained herein, nor the consummation of this Settlement Agreement, is to be construed or deemed an admission of liability, culpability, negligence, or wrongdoing on the part of Defendants or Releasees. Each of the Parties hereto has entered into this Settlement Agreement with the intention to avoid further disputes and litigation with the attendant inconvenience and  expenses. In particular, and without limiting the generality of the foregoing,  nothing in this Settlement Agreement shall be offered or construed as an admission of liability, wrongdoing, impropriety, responsibility or fault by Defendants or Releasees, who expressly deny any liability, wrongdoing, impropriety, responsibility or fault. Defendants maintain that they have complied with all relevant laws, including the Fair Labor Standards Act and all state wage and hour laws, and that it has at all times paid Class Members for all of their hours of work.

5. Class Counsel have thoroughly investigated the facts of the Action and have diligently pursued investigation and prosecution of Class Members' claims against Defendants. Based on their own independent investigation and evaluation, Class Counsel believes that the settlement with Defendants for the consideration and on the terms set forth in this Settlement Agreement is fair, reasonable, adequate, and in the best interest of the Class given all known facts and circumstances, including the risk of significant delay, the risk of loss or limited recovery, and the defenses asserted by Defendants.

6. The Settlement Agreement contains and constitutes a FLSA and State Wage Law Release from the Named Plaintiffs, Opt-In's and the Settlement Class Members, each of which includes Defendants and all Releasees.

{00133384.DOCX}

7.      Subject to Court approval of the Settlement Agreement, and on the terms set forth in this Settlement Agreement, Defendants will pay and promise as follows:

   a.    Defendant will pay up to a total sum of $78,200.59 ("Total Settlement Amount") into a Qualified Settlement Fund ("QSF") administered by the Settlement Administrator, from which (a) all Court-approved attorney's fees and costs and (b) service awards will be paid, and against which net amount remaining after those payments ("Net Settlement Fund") Class Members can make claims for payments in exchange for the Releases (as defined below).

   b.    Separate and distinct from the QSF, Defendants shall pay the Settlement Administrator's cost and fees.

   c.    Separate and distinct from the QSF, Defendants shall pay the total amount of Mr. Calzone's fees incurred with the Mediation.

   d.    Subject to approval by the Court, Defendant agrees to pay to Class Counsel up to $54,500.00 as attorneys' fees and costs and expenses, in full and complete satisfaction of all claims by Plaintiffs and their counsel for attorneys' fees, costs and expenses of any kind whatsoever. The payment of attorneys' fees, costs, and expenses shall be paid from the Total Settlement Amount within the QST. Class Counsel will apply to the Court for payment of said amount, to be approved by the Court. Defendants and Defendants' counsel will not oppose such a request. The total attorneys' fees and costs actually paid will be as approved by the Court in its Final Order. Defendants will report the payments to Class Counsel using an IRS Form 1099. The enforceability of this Settlement Agreement is not contingent on the amount of attorneys' fees or costs awarded. Without limiting the generality of the foregoing, any dispute regarding the amount of attorneys' fees or costs, and/or any appeal related thereto, shall not affect or delay the finality of this Agreement, and shall not affect or delay the entry of judgment in the Action.

   e.    Service payments of up to $2,500 each will be made to Named

Plaintiffs. Service awards, upon Court approval, will be paid out of the QSF.

f.    Defendant, through the QSF, will pay to each Settlement Class Member who submits a timely claim using the agreed Claim Form (Exhibit C) and fulfills the conditions of the claims procedure specified in this Settlement Agreement, the Payment amounts calculated as follows: The Net Settlement Fund will be divided into corresponding amounts reflecting the trebled monetary value of the manually created meal breaks for each Settlement Class Member during the time period of June 1, 2023 – March 17, 2024. Defendants' records shall determine the overall workweeks worked by the Settlement Class and the shares due to each Settlement Class Member.

g.    Any Settlement Class Member shares not claimed by Class Members shall be retained by Defendants.

h.    Of the amounts paid to each such Plaintiff and Class Members, 50% will be deemed wages and subject to normal payroll tax withholding and W-2 reporting, and 50% will be deemed non-wage payment for claimed trebled damages and/or interest, paid without withholding and subject to reporting as non-employment income reported in Box #3 on IRS Form 1099-MISC.

i.    Defendants shall be responsible for all employer-paid and due taxes on the wage portions of this Settlement, including FICA, FUTA, and state unemployment (the "Employer Payroll Taxes") but shall not be liable for any other taxes. The Employer Payroll Taxes shall be paid in addition to the Total Settlement Amount.

j.    The fees for the Settlement Administrator shall be paid from the Total Settlement Amount.

k.    <u>Indemnification</u>: The Settlement Class Members agree that Defendants have not made any representations regarding the taxability of any payments made pursuant to this Settlement Agreement. The Settlement Class Members agree and warrant that they have been and remain solely responsible for the timely payment of all taxes owed by each of them, if any, which have been due, or which may become due to any governmental

{00133384.DOCX}

6

Docusign Envelope ID: 5647B951-F02C-4A5B-AB28-E8SP9F0ECG45

authority from receipt of any funds received from Defendants pursuant to this Settlement Agreement. The Settlement Class Members hereby agree to indemnify, pay the costs of defense, and hold Defendants harmless from and against any and all claims, demands, obligations, and liabilities for such taxes, if any, for taxes owed by the Settlement Class Members, including, but not limited to, taxes, levies, assessments, garnishments, fines, interest, attorneys' fees and costs owed by the Settlement Class Members, if any, or incurred by Defendants. However, the Settlement Class Members are not responsible for any federal, state, or local tax liability of Defendants.

## MUTUAL FULL COOPERATION

8.     The Parties agree to fully cooperate with each other to accomplish the terms of this Settlement Agreement, including but not limited to, execution of such documents and to take such other action as may be reasonably necessary to implement the terms of this Settlement Agreement. The Parties shall use their best efforts, including all efforts contemplated by this Settlement Agreement and any other efforts that may become necessary by order of the Court, or otherwise, to effectuate this Settlement Agreement and the terms set forth herein. As soon as practicable after execution of this Settlement Agreement, Class Counsel shall, with the assistance and cooperation of Defendant and its counsel, take all necessary steps to secure the Court's approval of this Settlement Agreement and to obtain a final judgment in the Action upon completion of the terms and conditions of the Settlement Agreement as approved by the Court.

## DUTIES OF THE PARTIES PRIOR TO COURT APPROVAL

9.     Within 14 days of execution of this Settlement Agreement, Plaintiffs shall file an Unopposed Motion for Approval of Settlement, Attorneys' Fees and Costs, and Service Awards, that includes a Proposed Approval Order, substantially in the form attached as Exhibit A. Although this will be Plaintiffs' motion, the Parties will cooperate in the preparation of the Motion.

## DUTIES OF THE PARTIES FOLLOWING APPROVAL

10.     Within fourteen (14) days of the Court granting approval of the settlement, Defendants shall provide the Settlement Administrator with the Class List containing Class Member names and last known addresses, along with the

respective settlement shares of each Class Member calculated by Defendants. The Settlement Administrator will issue the Notices of the Settlement and of the Claims Procedure.

11. **Settlement Administration.**

a. Rust Consulting, Inc. has been selected as the Settlement Administrator. All settlement administration costs and fees for the Settlement Administrator, including but not limited to the mailing of the Notice and Claim Form to last known addresses, shall be paid by Defendants.

b. Defendants will not be obligated at any stage to engage investigative services to locate Class Members; however, the Settlement Administrator shall update Class Members' last known mailing address through the National Change of Address program certified by the United States Postal Service and other standard skip trace methods.

c. The Settlement Administrator will issue the Notice in accordance with this Settlement Agreement and any approval Order within fourteen (14) days of receiving the Class Member list from Defendants.

d. The Settlement Administrator shall be responsible for, in addition to any obligations stated herein or otherwise mutually agreed to by the Parties: establishing and maintaining a QSF; distribution of the Notice to Class Members; paying from the QSF the amount of attorneys' fees and costs awarded to Class Counsel; distributing any service payments; the settlement administration process; providing the Parties on a periodic basis with notice of the identity of individuals who timely submitted a Claim, or a Request for Exclusion of the Settlement, or an objection; calculating and disbursing payment for all appropriate taxes to be paid under the settlement, as stated herein as to the source of funds for payment of taxes owed (including the employer-paid and due taxes as addressed above that are paid outside the Total Settlement Amount); complying with all applicable tax reporting obligations including preparing and filing all applicable tax forms and amendments or modifications

required thereto; and distribution of the Settlement Checks to the Class Members.

12.   **Notice to the Class Members.**

    a.    The Settlement Administrator will send the Court-approved Notice of Class Action Settlement and the Claim Form, substantially in the form attached hereto as Exhibits B and C, and as approved by the Court (together "Notice"), including any modifications at the direction of the Court, to the Class Members, by first-class mail within the time frame in Section 10(c) above.

    b.    Class Members will have sixty (60) days after the Notice is first mailed to submit their Claim Form. Late claims, or claims submitted in a manner that does not comply with the process contained herein, shall not be accepted.

    c.    Named Plaintiffs and the Opt-In Plaintiffs are not required to submit a Claim Form in order to participate in this settlement and receive their Payments and shall be deemed participants by this Agreement pursuant to the authority designated to Class Counsel.

13.   **Claims: Binding Effect**

    a.    All Class Members who file a claim will be bound by the final approval order, the judgment, and the releases set forth in this Agreement.

    b.    None of the Parties, their counsel, nor any person on their behalf, shall seek to solicit or otherwise encourage anyone to object to the settlement, or appeal from any order of the Court that is consistent with the terms of this settlement, or discourage participation in the settlement claims process; however, Class Counsel may advise class members how to assert their right or provide other advice as required to comply with counsel's ethical obligations.

## POTENTIAL VOIDING OF THE SETTLEMENT AGREEMENT

{00133384.DOCX}

14. A failure of the Court to make final approval conditioned on any material provision of this Settlement Agreement which effects a fundamental change of the Parties' Settlement shall render the entire Settlement Agreement voidable and unenforceable as to all Parties herein at the option of the party adversely affected thereby. In the event the Court does not approve the Settlement Agreement according to the terms of this provision, the Parties reserve all rights, claims, and defenses. However, neither Party may void the Settlement Agreement based on the Court's approval or non-approval of a specific amount of attorneys' fees or costs or based on the Court's approval or non-approval of some or all of the Service Awards. The Court's failure to approve Class Counsel's fee and cost request shall not render the remainder of the Settlement Agreement unenforceable.

15. If this Settlement Agreement is voided under Section 14 of this Agreement and the disputed issue is not resolved by the Parties, this Settlement Agreement shall have no force or effect; all negotiations, statements and proceedings related thereto shall be without prejudice to the rights of any party, all of whom shall be restored to their respective positions in the lawsuit prior to the settlement; and neither this Settlement Agreement, its ancillary documents, actions or filings the Parties agreed to, or any statements made in connection with the negotiation of the settlement, shall be admissible or offered into evidence in the lawsuit or any other action for any purpose.

## SETTLEMENT AGREEMENT RELEASE
## AND PAYMENT PROCESSES

16. This Agreement becomes effective on the Effective Date.

17. Upon the Effective Date, (and except as to such rights or claims as may be created by this Settlement Agreement), each Class Member who timely submits a Claim Form in compliance with the procedures in the Notice shall be deemed to have agreed to and accepted the FLSA and State Law Release as stated below and in the Notice.

18. "State Law Release" means that the individual deemed covered under this Settlement Agreement fully releases and discharges Defendants and Releasees from any and all claims, debts, penalties, liabilities, demands, obligations, guarantees, costs, expenses, attorneys' fees, damages, action or causes of action of whatever kind or nature, whether known or unknown, expressly limited to wage and hour claims under Michigan or any other state or federal law for unpaid regular and/or overtime for hours worked by Class Member, and any damages, penalties,

interests, fees or costs derivative from those wage and hour claims available under any state or federal law, that were or could have been alleged in the Action or that reasonably arise out of the acts alleged in the Action, which includes all claims under any state or local law for payment for time worked for Defendants, and including associated liquidated damages, treble damages interest, and penalty claims that were asserted or could have been asserted in this Action for work performed by the Class Member during the Class Period. This release includes but is not limited to claims for alleged violations of Michigan's Wages and Fringe Benefits Act ("WFBA"), violations of the Michigan Improved Workforce Opportunity Wage Act ("IWOWA"), violations of Michigan common law (e.g., conversion, unjust enrichment, breach of contract), declaratory relief, injunctive relief, statutory conversion as set forth in MCL 600.2919a., alleged failures to pay overtime, alleged failure to pay minimum wage, alleged violations of state wage payment and collection laws, state common law, unjust enrichment, claims for unpaid wages pursuant to contract (whether actual or implied), and claims for unpaid wages as alleged in the Complaint, (including but not limited to claims for unlawful deductions of worktime as unpaid breaks regardless of whether such breaks were taken). Class Members do not by this release waive any claims that cannot be released by law.

19.    "FLSA Release" means that the individual deemed covered by that release under this Settlement Agreement fully releases and discharges Defendants and Releasees from any and all claims, debts, penalties, liabilities, demands, obligations, guarantees, costs, expenses, attorneys' fees, damages, action or causes of action of whatever kind or nature, whether known or unknown, expressly  limited to wage and hour claims under the FLSA for unpaid minimum wage or overtime, and any damages, penalties, interests, fees or costs derivative from those wage and hour claims available under the FLSA, that were specifically alleged in the Action or that reasonably arise out of the factual predicate of the acts alleged in the Action, which includes all claims under the FLSA for payment for time worked for Defendants, and including associated liquidated damages, interest, and penalty claims derivative of those claims for payment for time worked that were asserted or could have been asserted in this Action based on the factual predicate alleged in the Complaint under the FLSA during the Class Period.

20.    **Distribution of Settlement Payments to Class Members.**

a.    The QSF shall be funded by Defendants as follows:

i.    Within fourteen (14) calendar days of the Effective Date,

Defendants shall wire transfer to the Settlement Administrator the total amount of attorney fees, costs, settlement administrator fees, and service awards approved by the Court. The settlement administrator shall disperse the attorney fees, costs, and service awards as provided for by the Court, along with costs of administration to itself. Within fourteen (14) business days after the Settlement Administrator receives Defendants' payment pursuant to this provision, it shall pay to Morgan & Morgan, P.A. via wire transfer or otherwise the total amount of attorney fees, and costs approved by the Court and shall pay the Named Plaintiffs any Service Award Approved by the Court. Class Counsel shall provide the Settlement Administrator a fully completed IRS Form W-9.

ii.    Within twenty-one (21) calendar days following the expiration of the notice period or within twenty-one (21) calendar days after the total amount of claims submitted by the Settlement Class Members can be reasonably determined, whichever is later ("funding date"), Defendants shall deliver via wire transfer to the settlement administrator the total amount of the claims submitted, plus the Employer Payroll Taxes as that term is defined in Paragraph 7(i). The Settlement Administrator shall mail payments by check to all participating Settlement Class Members within fourteen (14) calendar days of the funding date.

b.    Settlement Class Members shall have ninety days (90) calendar days after the date of mailing to cash their settlement checks. Any uncashed check issued by Defendants to Settlement Class Members after that date shall revert to Defendants. The Settlement Administrator shall refund any uncashed checks from the QSF to Defendants within 30 days following the expiration of the 90-day calendar period referenced above in this paragraph.

## PARTIES' AUTHORITY

21.    The signatories hereby represent that they are fully authorized to enter

Docusign Envelope ID: 5647B951-F02C-415B-AB28-E8SP9F0ECS45

into this Settlement Agreement and bind the Parties hereto to the terms and conditions hereof.

## <u>ENFORCEMENT  ACTIONS</u>

22.    This Settlement Agreement is fully enforceable in the U.S. District Court for the Eastern District of Michigan before the Honorable Judith E. Levy or such judge as may be designated in his stead by the procedures of the Court, who shall retain jurisdiction to enforce this agreement.  However, before either Party seeks resolution with the Court, they shall return to mediation with David B. Calzone to attempt to resolve the issue via mediation between the parties.

## <u>NOTICES</u>

23.    Unless otherwise specifically provided herein, all notices, demands or other communications given hereunder by the Parties to this Settlement Agreement shall be in writing and shall be addressed as follows:

To Plaintiffs:

> Ertis Tereziu (P84911)
> Ann Kozak (P84465)
> Morgan & Morgan, P.A.
> 2000 Town Center, Ste. 1900
> Southfield, MI  48076
> (248) 739-1953
> etereziu@forthepeople.com
> anna.kozak@forthepeople.com

To Defendants:

> Daniel C. Waslawski (P78037)
> Starr, Butler & Stoner, PLLC
> Attorneys  for Defendants
> 20700 Civic Center Dr., Ste. 290
> Southfield, MI  48076
> (248) 554-2700
> dwaslawski@starrbutler.com

## <u>CONSTRUCTION</u>

24.    The Parties hereto agree that the terms and conditions of this Settlement Agreement are the result of lengthy, extensive, arms' length negotiations between the Parties and that the Settlement Agreement shall not be construed in favor of or against any Party by reason of the extent to which any party or his, her, or its counsel participated in the drafting of this Settlement Agreement.

## CAPTIONS AND INTERPRETATIONS

25.    Section or paragraph titles or captions contained herein are inserted as a matter of convenience and for reference, and in no way define, limit, extend or describe the scope of this Settlement Agreement or any provision hereof. Each term of this Settlement Agreement is contractual and not merely a recital.

## MODIFICATION

26.    This Settlement Agreement may not be changed, altered, or modified except in writing and signed by the Parties hereto, and approved by the Court, except that the Parties may mutually agree to reasonable extensions of time that do not affect any effective dates. This Settlement Agreement may not be discharged except by performance in accordance with its terms or by a writing signed by the Parties hereto.

## INTEGRATION CLAUSE

27.    This Settlement Agreement constitutes the entire agreement between the Parties relating to the settlement and transaction contemplated hereby, and all prior or contemporaneous agreements, understandings, representations, and statements, whether oral or written and whether by a party or such party's legal counsel, agreed to by the Parties in this matter, are merged herein. No rights hereunder may be waived except in writing.

## NO PRIOR ASSIGNMENTS

28.    This Settlement Agreement shall be binding upon and inure to the benefit of the Parties hereto and their respective heirs, trustees, executors, administrators and successors. The Parties hereto represent, covenant, and warrant that they have not directly or indirectly, assigned, transferred, encumbered, or purported to assign, transfer or encumber to any person or entity any portion of any liability, claim, demand, action, cause of action, or rights herein released and

{00133384.DOCX}

discharged except as set forth herein.

## **SIGNATORIES**

29.     It is agreed that because the Class Members are so numerous, it is impossible or impractical and not required to have each Class Member execute this Settlement Agreement.  The Notice will advise all Class Members of the binding nature of the release as applicable under this Settlement Agreement and such shall have the same force and effect as if this Settlement Agreement were executed by each Class Member.

## **PUBLICITY**

30.     Neither Parties nor their counsel shall not issue any press release about the Settlement Agreement or its terms.  The Parties shall respond to media inquiries only with the acknowledgment that "the matter was amicably resolved" and by directing the inquiring media personnel to the publicly filed documents in the Action for reference.

## **COUNTERPARTS**

31.     This Settlement Agreement may be executed in counterparts, and when each party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other  signed counterparts, shall constitute one Settlement Agreement, which shall be binding upon and effective as to all Parties.  Signatures sent by facsimile machine, scanned signatures in Portable Document Format sent by email, or by electronic signature through DocuSign shall be deemed original signatures.

In witness whereof, the Parties have executed this Agreement as of the date set forth below.

Docusign Envelope ID: 5647B951-F02C-415B-AB28-E8SP9F0ECC45

_Ashley Baker_

_____

**Ashley Baker**

3/10/2025
_____
Date


_____

**Michael Baker**

3/10/2025
_____
Date


**ALM Restaurants Detroit, LLC**

_____

By: _____

Its: _____

_____
Date


**ALM Restaurants, LLC**

_____

By: _____

Its: _____

_____
Date


**ALM Restaurants QOF, LLC**

_____

By: _____

Its: _____

_____
Date


**ALM Restaurants QOZB, LLC**

{00133384.DOCX}

16

**Ashley Baker**

Date

**Michael Baker**

Date

**ALM Restaurants Detroit, LLC**

By: Yusef Alcodray

Its: President

3/10/25

Date

**ALM Restaurants, LLC**

By: Yusef Alcodray

Its: President

3/10/25

Date

**ALM Restaurants QOF, LLC**

By: Yusef Alcodray

Its: President

3/10/25

Date

**ALM Restaurants QOZB, LLC**
{00133384.DOCX}

16

_____          3/10/25
                                         _____
By: _Yusef Alcodray_____               Date
Its: _President_____


**ALM Restaurants Management Company**

_____          3/10/25
                                         _____
By: _Yusef Alcodray_____               Date
Its: _President_____


_____          3/10/25
                                         _____
**Yusef Alcodray**                       Date


Approved as to form and substance:

_____          _____
**Ertis Tereziu, Class Counsel**         Date

_____          _____
                                       Date
By: _____

Its: _____


**ALM Restaurants Management Company**

_____          _____
                                       Date
By: _____

Its: _____


_____          _____
**Yusef Alcodray**                     Date


Approved as to form and substance:

_____          03/10/2025
                                       _____
**Ertis Tereziu, Class Counsel**       Date

# EXHIBIT 1-A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Michael Baker, an individual, and
Ashley Baker, an individual, on behalf          Case No. 24-10909
of themselves [sic] and those                   Hon. Judith E. Levy
similarly-situated,

      Plaintiffs,

v.

ALM RESTAURANTS DETROIT, LLC,

ALM RESTAURANTS, LLC, ALM

RESTAURANTS QOF, LLC, ALM

RESTAURANTS QOZB, LLC, Domestic

Limited Liability Companies, ALM
RESTAURANTS MANAGEMENT
COMPANY, Domestic Profit Corporation,
and YUSEF ALCODRAY, Individually,

      Defendants.

| | |
|---|---|
| MORGAN & MORGAN, P.A.<br>Ertis Tereziu (P84911)<br>Attorneys for Plaintiffs<br>2000 Town Center, Ste. 1900<br>Southfield, MI  48076<br>(248) 739-1953<br>etereziu@forthepeople.com<br>elana.gloetzner@forthepeople.com | STARR, BUTLER & STONER, PLLC<br>Daniel C. Waslawski (P78037)<br>Attorneys for Defendants<br>20700 Civic Center Dr., Ste. 290<br>Southfield, MI  48076<br>(248) 554-2700<br>dwaslawski@starrbutler.com |

## [PROPOSED] ORDER APPROVING SETTLEMENT AND DISMISSAL OF LAWSUIT WITH PREJUDICE

After a review of Plaintiffs' Unopposed Motion for Approval of Settlement

and Stipulation of Dismissal with Prejudice, the Settlement Agreement, and the

Declarations of Plaintiffs' Counsel, the Court is satisfied that the settlement reached is a "fair and reasonable resolution of a bona fide dispute" under the Fair Labor Standards Act. *See, e.g., Dillworth et. al. v. Case Farms Processing, Inc.,* No. 5:08-cv-1694, 2010 WL 776933, at *9 (N.D. Ohio Mar. 8, 2010); *see also Lynn's Food Stores, Inc. v. United States,* 679 F.2d 1350 (11th Cir. 1982); 29 U.S.C. § 216.

It is therefore this ___ day of ___ 2025 Ordered and Adjudged as Follows:

1.      The Proposed Settlement is APPROVED, including, but not limited to, the Service Awards, attorneys' fees and costs to Plaintiffs' Counsel, and Notice Process.

2.      That for the limited purposes of settlement, a FLSA collective action is certified, consisting of the following:

> The "Settlement Class" or the "Class" consists of all hourly employees of Defendants who worked at "McDonald's" franchises owned and operated by Defendants and/or members of their corporate family located at (a) 27901 Gratiot Ave, Roseville, MI, (b) 25900 Crocker Blvd, Harrison Township, MI, (c) 27675 Gratiot Ave, Roseville, MI, and (d) 1617 S Gratiot Ave, Clinton Township, MI, who had a meal break (i.e., both start and end time) manually entered by the user account of a member of Defendants' management during the time period of June 1, 2023 – March 17, 2024

IT IS FURTHER ORDERED that:

•       All capitalized terms not otherwise defined in this Order shall have the same meaning ascribed to them in the Parties' Settlement Agreement;

•       Rust Consulting, Inc. will serve as "Settlement Administrator" in providing notice, claim process and administration services under the Settlement Agreement;

- Named Plaintiffs are appointed as representatives for the Settlement Class; and

- Plaintiffs' Counsel, Ertis Tereziu (P84911) and Anna Kozak (P84465), of Morgan & Morgan, P.A. are approved as Class Counsel for the Settlement Class.

IT IS FURTHER ORDERED that the form and content of the Notice of Proposed Settlement and the Claim Form attached to the Motion to Approve Settlement are adequate, proper, comport with Due Process, and they are hereby approved and authorized for distribution to Class Members;

IT IS FURTHER ORDERED that Counsel for the Parties are hereby authorized to jointly use all reasonable procedures in connection with approval and administration of the settlement that are not materially inconsistent with this Order or the Settlement Agreement, including making, without further approval of the Court, minor changes to the form or content of the Notice, moderate extensions of time that do not alter effective dates, and minor changes to other exhibits that they jointly agree are reasonable or necessary.

IT IS FURTHER ORDERED that this case be and is DISMISSED with Prejudice and without attorney fees or costs, except as provided in the Settlement Agreement.

_____
Hon. Judith E. Levy
United States District Judge